IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| Fabron Marine Corp., | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No.: |
| | ) In Admiralty |
| Hong Glory International Shipping Company Limited (Marshall Islands), | ) |
| Hong Glory Shipping Co., Limited (HK), | ) |
| Defendants, | ) |
| and | ) |
| Citibank NA, | ) |
| Wilhelmsen Ports Services, | ) |
| Wilhelmsen Ships Services, | ) |
| Garnishees. | ) |

**VERIFIED COMPLAINT WITH REQUEST FOR ISSUE OF**
<u>**PROCESS OF MARITIME ATTACHMENT AND GARNISHMENT**</u>

Fabron Marine Corp, ("Fabron") brings this action against Hong Glory International Shipping Company Limited (Marshall Islands) and Hong Glory Shipping Co., Limited (HK) ( collectively, "Hong Glory") *quasi in rem* pursuant to Supplemental Rule B for Certain Admiralty and Maritime Claims, requesting the issue of process of maritime attachment and garnishment including against Garnishee and states as follows:

<u>**Jurisdiction and Venue**</u>

1.  This is an action within this Court's admiralty jurisdiction pursuant to 28 U.S.C. § 1333 and is an admiralty or maritime claim within Fed. R. Civ. P. 9(h). Fabron further brings this action pursuant to 9 U.S.C. §§ 1, 8 for security for arbitration which Fabron has initiated

against Hong Glory in London pursuant to a vessel charter party between Fabron and Hong Glory as more fully detailed below.

2. Venue is proper in this District because Garnishees can be found in this District and therefore Defendants' property also is located in this District.

3. Defendants cannot be found in this District within the meaning of Supplemental Rule B.

### The Parties

4. Fabron is a company organized under the laws of Liberia and owns the ocean vessel M/V ERACLE, IMO 9499450 ("Vessel").

5. Hong Glory International Shipping Company Limited is a Marshall Islands company and Hong Glory Shipping Co., Limited (HK) a Hong Kong company (collectively, "Hong Glory") which operated concerning Fabron and others as one entity, satisfying debts of one by payment from the other and by information and belief operating from the same offices at Shanghai, China, each together functionally one entity.

6. Garnishee each are entities with offices or agents located in this District which, on information and belief as detailed below, Fabron reasonably believes hold accounts or property of and/or owing to Hong Glory.

### Facts

7. Pursuant to a time charterparty ("C/P") dated on or about February 17, 2023 on an amended New York Produce Exchange ("NYPE") 1946 form together with additional clauses, Fabron chartered the Vessel to Hong Glory.

8. The principal outstanding amount due to Fabron and including that demanded here for arbitration security related to the costs and time of removing dunnage which Hong Glory

in breach of the C/P left aboard the Vessel. Immediately below is a photograph of taken on or about the day of redelivery of the Vessel, showing the dunnage still strewn about the Vessel, left in breach of the C/P by Hong Glory:



In breach of C/P, Hong Glory redelivered the Vessel with extensive dunnage remaining in the holds which the crew were obliged to shift on deck for discharge by Fabron in mitigation.

9.      The C/P terms include the following:

Fixture Recap:

" ... Steel Cargoes Protective Clause ...

G.      Charterers are to arrange for the supply and the collection / removal / disposal of all necessary dunnage, lashing and/or any other materials and additional equipment and fittings needed for the proper and safe carriage of the cargo at their time, risk and expense and always as per international regulations for garbage disposal.

\* \* \*

08.     Hire/ Hire.Payment

Hire USD 5,250 PDPR [per day pro rata] INCLOT [including overtime] for first 70 days and USD 11,500 thereafter.

First 50 days hire to be paid within 3 days after delivery, thereafter every days in advance.

\* \* \*

  10. ILOHC [in lieu of hold cleaning]

Charterers have the option to redeliver the vessel with uncleaned holds, provided all cargo has been discharged, against a lumpsum payment of USD 5,000 EXCL lashing, separations and dunnage removal which are to be removed on Charterers account / time.

  11. Bunker [Fuel] Clause

Bunker on delivery about ASF:

VLSFO: ABT650 MTS [metric tons]
LSMGO: ABT 114 MTS [metric tons]

Final quantities will be declared by Master on delivery.

Redelivery quantities abt same quantity as actual on delivery . . .

No payment of bunkers on delivery - minor differences between delivery and redelivery quantities to be settled at agreed price . . .

Prices BENDS VLSFO US$ 715 I LSGMO US$ 1000 to be used for minor differences between delivery and redelivery quantities only . . .

           * * *

  16. Charter Party

Otherwise as per Owners C/P attached, with logical amendments as per main terms Agreed . . . "

Pro-forma

62. BIMCO Dunnage Removal Clause for Time Charter Parties 2007

"The Vessel shall be delivered and redelivered free of all dunnage, lining and packing materials ... "

  10. The Vessel was delivered to Hong Glory at 04:00 hrs GMT on February 18, 2023 and redelivered at 16:18 hrs GMT on May 10, 2023.  Delivery bunkers (fuel) were LSFO 760.40 mt and MGO 113.70 mt.

  11. Pursuant to Hong Glory's orders, the Vessel loaded a cargo of steel slabs at Son Duong, Vietnam. The Master was obliged to serve two Letters of Protest during loading

4

operations relating to cargo condition and inadequate / "no proper dunnage between the cargo hold bulkheads and steel slabs." By an email timed at 10:50 hrs on March 7, 2023, Fabron placed Charterers on notice that, ". . . Also, Chrtrs please note that the Vessel has not received any dunnage certificates (Phytosanitary) and this may be a serious problem at the discharging port. Chrtrs are requested to arrange for same."

12. By Hong Glory's email March 30, 2023, "Chrts wonder if Ows have fixed next voyage after Brownsville and we would like to check the possibility if Ows could agree Chtrs to arrange dunnage removal in the next port after Brownsville as it's not quite convenience to perform so. And the cost will be calculated into Chrts account."

13. Fabron responded:

. . . we tried to assist by approaching own agents, with negative results. There are no any intension for next employment I next port and with the remaining dunnage/lashing material on board will be very difficult I impossible to fix her for next employment.

Hence kindly get the dunnage and lashing material removed on your time I expense prior re-delivering.

Below recd from our agents in Brownsville

So unfortunately, I will not be able to assist you with a quote for dunnage removal in Brownsville. Since the dunnage is coming from Vietnam it won 't be allowed to be discharged I disposed in Brownsville, per Ternium 's contract agreement with the Charters party.

None of the local Stevedores will touch the dunnage because of this, and therefore I won't be able to get it discharged in Brownsville.

14. Hong Glory responded April 27, 2023 confirming their understanding of the local situation in Brownsville was the same (*ie.* discharging the dunnage was not possible and requesting:

We highly appreciate Ows keep us posted on next loading port and we will pay for the assistance to pack & tie the dunnage together on deck temporarily before throwing in the next loading port. The cost will be on Chrts account for the packing of dunnage together

5

& throwing.

15. The Vessel arrived at the discharge of Brownsville, Texas and commenced discharge at 1530 hrs on May 7, 2023. Discharge was completed at 06:15 hrs on May 10, 2023 with the Vessel sailing at 11:18 hrs on the same day. The Statement of Facts concerning the discharge records, "[d]unnages not discharged, all dunnages are inside the cargo holds."

16. On completion of discharge, a significant amount of dunnage remained in the Vessel's holds.

17. The discussion on options for disposing of the dunnage continued into May with Fabron requesting on May 9, 2023 that Hong Glory "check option of disposing dunnage at nearest port. Kindly arrange dunnage disposal before redelivery." On the same day, Fabron further advised that the Vessel was "on subs for a grain cargo ex Mississippi ... the situation now calls for the dunnage to be disposed prior re livery, otherwise the next employment can not be materialized and this shall create serious issues."

18. On May 9, 2023 Fabron chartered Vessel to another charterer, XO Shipping A/S, loading a grain cargo, the charter to begin between May 13 and 17, 2023.

19. May 10, 2023 Fabron followed up with Hong Glory to advise, "[w]hile the vessel has completed cargo discharging and await Chrtrs further orders . . . . The vessel now is fully fixed for a time charter with grains from Mississippi and the vessel must arrive at South West Pass free of dunnage . . . ."

20. Hong Glory responded on May 10, 2023 as follows:

Pls Ows kindly advise the full style of agent of next loading port and Chrtr will check with agent for dunnage issue. Suggest Ows instruct Crew to handle dunnage which is a quickest way and could make loss minimum since Brownsville not workable to handle dunnage but once vs/ sailed we can do that. Chrtrs are willing to pay bonus to Crew for their assistance. As per Chrtrs last we don't want to enlarge loss and as per Chrtrs experience dunnage issue will not affect grain loading . . ..

21. Under protest for "unclean holds and excessive quantity of dunnage remaining on board in all cargo holds, in breach of the terms of the charterparty", the Master of the Vessel tendered a Notice of Redelivery for 16:18 hrs UTC on May 10, 2023 with bunkers VLSFO 830.30 mt and LSMGO 124.50 mt.

22. By emails dated May 15, 2023, the succeeding charterer, XO Shipping made clear that delivering the Vessel laden with dunnage was not an option and would be in breach of charter, stating including that:

> We have been advised that vessel will have a lot of dunnage on board, same dunnage creating problems to our loading if terminal / CBP does not approve same ... Please let us have owners plans for this dunnage? We need this info asap so we avoid that CBP / terminal in worst case reject vessels loading.

23. Fabron attempted to negotiate an opportunity to persuade the terminal to accept the Vessel and requested an extended laycan and cancelling date to May 27, 2023. The succeeding charterer, XO Shipping responded that they could agree an extended cancelling date of May 20, 2023 (to match that with their voyage charterers) but Fabron would have had to have removed all dunnage by that deadline.

24. In the circumstances, and in view of Hong Glory's breaches, Fabron had no alternative but to arrange removal of the dunnage prior May 20, 2023.

25. Fabron delivered the Vessel to XO Shipping at 21:48 hrs on May 17, 2023 in position "SW PASS PILOT BOARDING AREA" but XO Shipping placed the Vessel off-hire between 18 - 20 May equivalent to US $37,527.62.

26. Fabron August 25, 2023 sent Hong Glory a detailed claim with photographs and supporting invoices.

27. The ballast voyage from Brownsville to SW Pass (redelivery point to XO Shipping) took 1.5 days. Fabron estimates the time required for hold cleaning prior to relievery to be about one day. But for Hong Glory's breaches and failure to remove dunnage prior redelivery (or at all), Fabron would have been in a position to deliver the Vessel to XO Shipping at 00:00 hrs on May 13, 2023.

28. Fabron claims damages at least as follows:

   (1) Hire of hire from May 13, 2023 00:00-21:48 hrs to July 7, 2023 4.908333 days@$15,500 per day (net 3.75% commission), $73,226.15;

   (2) XO time charter, us $73,226.15, Offhire $6,590.11, further Offhire $30,937.51;

   (3) Bunkers: LSMGO (3 mt I day x 5 days) 15 mt@ $900/ mt $13,500.00

   (4) DIA-removal expenses at New Orleans, $73,104.80

   (5) Extra payment to crew for removing dunnage, $6,000.00

   (6) Crew overtime (time spent on dunnage removal), $2,260.80

   (7) Additional C/P charges due/overdue, $12,712.72

**Total $218,332.09**

**Specific Allegations - Garnishees**

29. Fabron has reviewed records, including from its independent investigation, showing that Hong Glory has made recent payments from and keeps accounts with Garnishee Citibank NA. Hong Glory further regularly utilizes the vessel agency services of Garnishee Wilhelmsen Ports Services and/or Wilhelmsen Ships Services, making regular deposits with each for the provision of and payment for services provided to vessels chartered, owned or operated by Hong Glory.

## Count I – Breach of Contract – Security for Arbitration

30. Fabron repeats the foregoing paragraphs.

31. Hong Glory has breached its maritime contracts with Fabron and caused Fabron damages, which are subject to London arbitration, for which including contractual attorneys fees, costs, and interest Fabron seeks security by way of funds and other property held by Garnishee, as demanded below.

32. Fabron incorporates the foregoing paragraphs as if fully set forth herein.

33. Fabron seeks issuance of process of maritime attachment and garnishment so that it may obtain payment for the amounts due from Hong Glory.

33. No security for Fabron's claims has been posted by Hong Glory, or anyone acting on its behalf, to date.

34. Hong Glory cannot be found within this District within the meaning of Rule B, but is believed to have, or will have during the pendency of this action, property and/or assets in this jurisdiction consisting of cash, funds, freight, hire, and/or credits in the hands of Garnishees in this District.

## Prayer for Relief

WHEREFORE, Fabron prays:

A. That, in response to Count I, as Hong Glory cannot be found within this District and pursuant to Supplemental Rule B, this Court issue an Order directing the Clerk to issue Process of Maritime Attachment and Garnishment to garnish and attach property of Hong Glory including but not limited to, accounts payable owed or to be owed from Garnishee to Hong Glory in the amount of at least ($218,332.09 as detailed above, and an estimated further amount of $100,000 for arbitrators and attorneys fees, interest and costs to the conclusion of London

9

maritime arbitration) (herein, the "Security Amount"), upon that total amount being garnished and attached, this action to be stayed and the amount to await final award in arbitration and judgment entered on such award by this Court;

  B. That upon the Security Amount being garnished that this Court stay this action pending the outcome of the London maritime arbitration and on arbitral award being entered for Fabron order that upon recognition by this Court such award be paid from the Security Amount; That such person over 18 years of age be appointed as moved for herein, pursuant to Supplemental Rule B and Fed. R. Civ. P. 4(c) to serve Process of Maritime Attachment and Garnishment; and

  C. That this Court award Fabron such other and further relief that this Court deems just and proper.

              YOUNG CONAWAY STARGATT
              & TAYLOR LLP

              */s/ Timothy Jay Houseal*

**Of Counsel**           _____
J. Stephen Simms        Timothy Jay Houseal (Del. Bar ID No. 2880)
Simms Showers LLP       Rodney Square
201 International Circle, Ste. 230   1000 North King Street
Baltimore, Maryland 21030     Wilmington, DE 19801
Telephone: (410) 783-5795    (302) 571-6682
Facsimile: (410) 510-1789    thouseal@ycst.com
jssimms@simmsshowers.com

        *Attorneys for Fabron Marine Corp.*

Dated: December 20, 2023

## **VERIFICATION**

I am a Principal of the law firm Simms Showers LLP, of counsel to Plaintiff.

The facts alleged in the foregoing complaint are true and correct to the best of my knowledge and information based upon the records of Plaintiff made available to me by Plaintiff. Authorized officers of Plaintiff are not readily available in this District to make verifications on Plaintiff's behalf. I am authorized to make this verification on Plaintiff's behalf.

I further certify that, pursuant to Supplemental Rule B, I caused a search to be made of electronic records and Directory Assistance for addresses and telephone numbers of defendant in this District. There is no record of any general or resident agent authorized to accept service of process for Defendant in this District.

Pursuant to 28 U.S.C. § 1746(1), I solemnly declare under penalty of perjury that the foregoing is true and correct.

Executed on December 20, 2023.

*/s/ J. Stephen Simms*
J. Stephen Simms